303 So.2d 851 (1974)
HAMMOND ASPHALT COMPANY, INC. Cutting-Pike Investment Corporation, Substituted Plaintiff,
v.
L. B. PONDER, Jr., et al.
No. 10022.
Court of Appeal of Louisiana, First Circuit.
November 12, 1974.
Rehearing Denied December 16, 1974.
Writ Refused February 7, 1975.
*852 L. B. Ponder, Jr., and J. Lynn Ponder, Amite, for appellant.
Rodney C. Cashe and Henry A. Mentz, Jr., Hammond, for appellees.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
LANDRY, Judge.
Defendants, L. B. Ponder, Jr. and Charles Law Ponder (Vendors), appeal from a judgment in favor of substituted plaintiff, Cutting-Pike Investment Corporation (Purchaser), ordering specific performance of a contract to sell real property. We affirm the judgment of the trial court ordering Vendor to convey Purchaser the ten acre tract described as the NE/4 of the SW/4 of the NE/4, Section 30, T 6 S, R 8 E, Tangipahoa Parish, and to clear title to and transfer to Purchaser the hereinafter described 2.25 acre parcel of land.
By written agreement dated December 2, 1971, Vendor offered to sell Hammond Asphalt Company, Inc. a 12.25 acre tract of land situated in Tangipahoa Parish, for the sume of $1,590.00 per acre. The proposal was duly accepted by Asphalt's Secretary-Treasurer, Wiley Sharp. Simultaneously with its acceptance, and in compliance with contract terms, Asphalt deposited $1,948.00 (10% of the contract sale price) with Mrs. Celeste Legendre (Realtor), who was instrumental in bringing the Vendor and Purchaser together. The agreement provides that "The deposit made herein shall never be considered as earnest money and either party may compel specific performance." Additionally, the contract recites that the sale shall be passed before Purchaser's Notary on or prior to January 5, 1972, and that Vendor shall deliver Purchaser a merchantable and warranted title. The contract further provides that Realtor was entitled to a commission of $90.00 per acre, and that the terms of the sale would be 20% cash on the date of the sale, the balance being payable in four annual installments bearing 7% interest.
Subject tract consists of the NE/4 of the SW/4 of the NE/4 of Section 30, T 6 S, R 8 E, Tangipahoa Parish, Louisiana, and an *853 adjoining parcel containing 2.25 acres, which property abuts a parcel already belonging to Purchaser. The land herein involved was acquired by Vendor at a Sheriff's Sale of property belonging to the Succession of Sidney Lewis Egnew and Hattie B. Egnew, held May 4, 1966. Following execution of the agreement to sell, Purchaser undertook a title examination which established merchantable title to the 10 acre tract. However, it was discovered that title to the 2.25 acre parcel was defective in that the purported acquisition by the Egnews of the 2.25 acre parcel from Ebner A. Forbes did not date from April 23, 1914, but rather from June 28, 1919. The significance of this development lies in the fact that custom in Tangipahoa Parish accepts as merchantable title to properties which show no record gaps in ownership or other defects for a period of sixty years preceding date of sale. It is not disputed that the disclosed hiatus rendered Vendor's title unmerchantable. Vendor was notified of this development, and agreed to take steps to remedy the flaw either by obtaining quit claim deeds from the Egnew heirs or by instituting legal proceedings to cure the defect. It became evident Vendor could not pass the title before January 5, 1972; the parties, on January 3, 1972, extended the time for passing the sale to January 15, 1972. On January 13, 1972, counsel for Purchaser telephoned the Vendor regarding the condition of title to the 2.25 acre tract. By letter dated January 14, 1972, Purchaser wrote reminding Vendor of Vendor's agreement to institute legal proceedings against the Egnew heirs to remove the impediment from the title to the 2.25 acre tract.
While it appears that Purchaser exerted some effort to obtain quit claim deeds from the Egnew heirs, Vendor made no effort to institute legal proceedings to cure his title. It is equally clear that Purchaser repeatedly offered to assist Vendor in whatever efforts Vendor might make to correct the title defect. On an undisclosed date following January 15, 1972, Vendor proposed an exchange of properties of equal value instead of a cash sale because an exchange would result in certain tax advantages for Vendor. To accommodate Vendor, Purchaser then offered properties for exchange, but none were acceptable to Vendor as being of equal value. Ultimately Purchaser called upon Vendor to deliver title and accept payment of the stipulated agreement price. Vendor repudiated the agreement and declined to sell.
Vendor's basic position is that the agreement is unenforceable because the sale was not passed within the specified time which has now elapsed inasmuch as it was not extended in writing. Alternatively, Vendor contends that Purchaser has abandoned and waived its rights under the agreement.
Purchaser's timely acceptance of Vendor's offer to sell resulted in a contract enforceable by either party. A written promise to sell an immovable, which instrument specifies the thing, term and price, when accepted, entitles either party to the agreement to demand specific performance upon compliance with his obligations therein. LSA-C.C. art. 2462. In this instance, Purchaser complied with all obligations incumbent upon him under the agreement.
We find no merit in Vendor's contention that the agreement is unenforceable because the time specified for passing the sale was not extended in writing before the original expiration date. Purchaser's acceptance of Vendor's offer to sell confected a binding agreement.
The following principle set forth in Welsh v. Myatt, La.App., 164 So.2d 393, is appropos and decisive of the issue presented:
"The Code distinguishes the obligation arising from the term that arising from condition proper in that the former does not suspend the engagement, but only retards its execution whereas the latter suspends the engagement. Also the Code provides that `when an obligation has been contracted on condition that an *854 event shall happen within a limited time the condition is considered as broken when the time has expired without the event having taken place'. The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it. LSA-C. C. Arts. 2048, 2051, 2038 and 2040."
In this instance, the specified date for passage of the sale was not a condition precedent to passage, but rather constituted a term to which the parties mutually agreed. If the sale were not passed by the time stated, either or both parties would have been in violation of the contract. It is clear that Purchaser was not in violation or default inasmuch as Purchaser was ready, willing and able to accept title according to the provisions of the agreement. The fault in this case lies with Vendor who breached the provision of the contract requiring Vendor to tender merchantable title. In this instance Vendor was put on notice by discussions with Purchaser, and also by Purchaser's letter of January 14, 1972.
Numerous cases are cited by Vendor as authority for the rule that a purchaser will be denied specific performance of an agreement to sell where the purchaser allows the specified performance time to expire without demanding specific performance. We have read every cited case and find that none are factually apposite. In each quoted instance, the case involved either a suit for damages instead of specific performance, or the party seeking specific performance was himself at fault. In the case at hand, the record establishes beyond doubt that Vendor declined to discharge his obligation to furnish merchantable title within the time called for in the contract.
Under the circumstances, it would have been a vain and useless gesture for Purchaser to have appeared for confection of the sale on January 15, 1972, and tender the remaining down payment portion of the purchase price. Vendor was aware of the unmerchantability of his title, and equally aware of his inability to cure the defect by the promised date.
On authority of Shields v. Bain, 9 La.App. 267, 120 So. 113; Shell Oil Co. v. Hogan, 228 La. 37, 81 So.2d 761, and Bellestri v. Clark, 239 La. 713, 119 So.2d 836, Vendor maintains that Purchaser has waived or abandoned all rights under the agreement. This position is clearly refuted by the record. It is clearly shown that Purchaser at all times stood ready, willing and anxious to complete the sale. It is also shown that Purchaser repeatedly offered to assist Vendor in any way possible to remove the flaw in title. As previously noted, Purchaser even agreed to Vendor's request for an exchange of property to accommodate Vendor.
Vendor's final contention is that the agreement is unenforceable because the contract was with Hammond Asphalt Company, Inc., whereas, specific performance is sought herein by Cutting-Pike Investment Corporation. It suffices to state that the agreement in question does not prohibit assignment or transfer of the rights therein acquired by the Purchaser, and that the record contains ample proof of merger of Hammond Asphalt Company, Inc. with surviving Cutting-Pike Investment Corporation, plaintiff herein.
The trial court rendered judgment herein as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that Cutting-Pike Investment Corporation, (substituted plaintiff for Hammond Asphalt Company, Inc.), have judgment in its favor and against defendants, L. B. Ponder, Jr. and Charles Law Ponder, jointly, severally and in solido, recognizing the contract between Hammond Asphalt Company, Inc. and L. B. Ponder, Jr., dated December 2, 1971, as legal and binding, and ordering said defendants to convey to plaintiff, within fifteen (15) days from the date of this judgment the ten (10) *855 acre parcel, more or less, described as the NE/4 of the SW/4 of the NE/4 in section 30, T 6 S, R 8 E, Tangipahoa Parish, Louisiana, with full warranty, and free from any liens, mortgages or other encumbrances.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that insofar as the 2.25 acre strip located North of the above 10 (10) acre parcel, which 2.25 acre strip is described as follows: begin at the Northwest Corner of the above described ten (10) acre parcel and run North 140 feet; thence East 644 feet to a point within fifteen (15) feet of the East line of the NW/4 of the NE/4; thence South to the North line of said 10 acres; thence West to the Point of Beginning, located in Section 30, T 6 S, R 8 E, Tangipahoa Parish, Louisiana, the defendants are ordered to file suit at their expense against the Estates of Mr. and Mrs. Ebner Forbes, in order to confirm and have their title recognized as against the Estates of said Mr. and Mrs. Ebner Forbes and/or their heirs or legal representatives; further, that defendants be ordered to prosecute said suit with due diligence, and upon obtaining a judgment recognizing their title, to convey said property, with full warranty, and free from any liens, mortgages or other encumbrances, to plaintiff within fifteen (15) days of the date said judgment becomes final.
IT IS FURTHER ORDERED that the consideration for the transfer of each parcel shall be as per contract, as follows: $1,590.00 per acre, twenty (20) per cent in cash and the balance payable on a seven (7%) per cent note payable in four (4) equal annual installments, allowing plaintiff credit for the $1,948.00 cash deposited with the realtor."
It is ordered, adjudged and decreed that the judgment of the trial court is affirmed in all respects save that Vendor is ordered and directed to convey to Purchaser the ten acre tract above described within fifteen (15) days of the date this judgment becomes final; all costs of these proceedings to be paid by Appellants.
Amended and affirmed.