CULPEPPER, Judge.
The defendant-vendor appeals a judgment granting the plaintiffs-buyers’ demand for specific performance of a contract to buy and sell a home.
The substantial issue is whether plaintiffs were in default by failing to close the sale on the date set in the contract or an agreed extension thereof.
The parties entered into the written agreement on June 28, 1977. The purchasers deposited $1,000 on the price of $49,500. The sale was conditioned on the purchasers’ ability to secure a loan of $39,300 within 60 days. On August 5, 1977, a financing commitment was obtained for the loan. The contract also provided that the sale was to be closed not later than November 28, 1977, subject to time allotted for curative title work or completion of new construction.
The document in question was a form contract provided by defendant-builder and containing the standard language:
“In the event the purchaser fails to comply with this agreement within the time specified the seller shall have the right to declare the deposit ipso fact, foreited without formality beyond tender of title to purchaser, (emphasis ours) or the seller may make specific performance.
*1289 “In the event the seller does not comply with this agreement within the time specified, the purchaser shall have the right either to demand the return of his deposit in full plus and equal amount to be paid as penalty by the seller, or the purchaser may demand specific performance (emphasis ours).”
Construction of the home began immediately after the signing of the agreement. Purchasers were at this time residing in Anchorage, Alaska. They did not visit the home for inspection until December 11, 1977. During that visit they discovered that the builder had encountered problems in building the home according to the exact specifications of the blueprints selected by the parties. They found that he made substantial deviations therefrom in the course of construction without consulting them. After negotiations between the parties, the defendant-builder agreed to make certain changes and corrections in the house. The purchasers thereupon indicated their willingness to proceed with the transaction as soon as the construction was completed.
On about March 2, 1978, the defendant’s sales representative notified the loan officer who was handling the loan that construction was complete. The secretary for the attorney handling the act of sale testified that the final title work on the property was completed March 28, 1978. The necessary closing documents were then completed and mailed to the McGees in Alaska on April 4, 1978. They were received back, properly executed by the purchasers, in the attorney’s office on April 26, 1978. In the meantime, a letter dated April 24, 1978 was mailed to Mr. McGee by the attorneys for the defendant-builder, wherein it was stated that the defendant considered the purchasers to be in default on the agreement to buy and sell and that defendant was refunding their deposit.
The plaintiffs testified at trial that no one representing the defendant ever made any objection to the manner in which the transaction was being closed, that title to the property was never tendered to them, that subsequent to the time they received notice that construction was complete no one ever made a demand that they perform their obligation, and that they never received from the builder an act of sale to be executed by them. This testimony was un-contradicted.
In support of its contention that the trial court erred in finding plaintiffs were not in default, the defendant argues that since the sale had not been closed at the time of completion of construction, as provided by the agreement, and no extension of the closing date had been agreed to in writing, the offer to purchase (or sell) the property had expired and neither party had any right to enforce the contract.
The plaintiffs argue that the language of the contract is controlling, and that the seller was required to first put the purchasers in default according to the terms of the contract by tendering title to them. Thus, absent the tendering of title by the seller, the contract remained viable and either party could put the other in default in accordance with the Louisiana Civil Code and terms of the contract. We agree.
The general codal articles on default require that in commutative contracts, the party who wishes to put the other in default must, at the time and place expressed in or implied by the agreement, offer or perform that which he is bound to do under the agreement, otherwise the other party will not be legally in default. LSA-C.C. Articles 1911-1913.
The vendor relies on De Francesch v. Cella, 367 So.2d 78 (La.App. 4th Cir. 1979) in support of its contention that the contract expired once the date set for passing the act of sale went by without the closing of the sale, or a written agreement to extend the time. We find that case inappo-site to this suit as there is no indication therein of any specific contractual provisions regarding the effect of failure to close by the specified date.
Under Louisiana Civil Code Article 1901, a contract has the effect of law on the parties thereto. Thus, the contract language quoted above provides the law be *1290 tween the parties in the event either or both do not comply with the contract within the specified time. This same language was considered by the Louisiana Supreme Court in Everhardt v. Sighinolfi, 232 La. 996, 95 So.2d 632 (La.1957), wherein it was stated that such language “clearly negatives the idea of the purchasers being in automatic default for mere failure to perform”, since it requires that the vendor must tender title before the deposit is forfeited. Thus, absent a tender of title, the purchaser is not in legal default and remains free to place the vendor in default by bringing suit to demand specific performance.
Luna v. Atchafalaya Realty, Inc., 325 So.2d 835 (La.App. 1st Cir. 1976) also involved a contract containing a clause identical to the one under consideration here and in Everhardt, supra. The sole question was whether or not the contract had expired according to its terms when title was not passed by the specified deadline, relieving all parties of any obligations thereunder. The failure to close the sale by the date specified in that case was due to delays in acquiring a loan. A later date was set for the closing at which the vendor was present, but the purchaser failed to sign, and was ultimately notified that he should either take title to the property or forfeit his deposit. The purchaser sued for return of the deposit on the grounds that the contract was no longer viable once the date specified in the contract had passed without execution of the act of sale. The First Circuit held that, time not being of the essence of the agreement, and title never having been tendered by defendants nor demand made by the plaintiff-purchaser, neither party was in default until the defendant-vendor demanded performance by the purchaser.
There is nothing in the instant case to indicate that the parties considered that time was of the essence. Indeed, defendant makes no such argument. Nor does the law provide that the passive breach of such a contract is equivalent to a default. Thus, since dissolution of the contract, as defendant is claiming here, requires a putting in default under Art. 1912, this case is governed by LSA-C.C. Art. 1911, Subparagraph (2). Luna v. Atchafalaya Realty, Inc., supra; Fortenberry v. Decay, 279 So.2d 725 (La.App. 1st Cir. 1973). That article provides as follows:
“Art. 1911. The debtor may be put in default in three different ways: by the term [terms] of the contract, by the act of the creditor, or by the operation of law:
* * * * * *
2. By the act of the party, when at or after the time stipulated for the performance, he demands that it shall be carried into effect, which demand may be made, either by the commencement of a suit, by a demand in writing, by a protest made by a notary public, or by a verbal requisition made in the presence of two witnesses.”
The contract itself provides the act by which the seller must put the purchaser in default before he may claim forfeiture of the deposit as damages for breach of the contract. The requirement is tender of title to the purchaser. Under this contractual provision, tender is a prerequisite.
The contract thus remained viable after the expiration of the time for transferring title and either party could have put the other in default and demanded specific performance. Everhardt, supra; Luna, supra; Succession of Jones, 369 So.2d 1143 (La. App. 1st Cir. 1979).
Moreover, according to this agreement, the deadline for execution of the final act of sale was not a specified date. The defendant-vendor saw fit to protect himself against the possibility of inadvertently breaching the contract for failure to complete construction within a specified time, by adding the proviso that the date of closing would be subject to completion of construction. It was further subject to time for curative title work. Once construction was complete and the necessary title work done, the defendant could have, at any time, tendered title to the plaintiffs and thus placed them in default. This it failed *1291 to do. The letter of April 24, 1978, merely stated that the defendant considered the plaintiffs in default, and that the defendant did not stand ready to perform its obligation under the agreement. The plaintiffs showed that at all times after the settlement of the dispute over the changes they were ready, willing and able to pass the act of sale and take title to the property. Indeed they had already executed the necessary papers by the time the defendant attempted to return their deposit. All attempts thereafter to have the seller execute the act of sale were in vain.
The defendant was well aware that the McGees were residing in Alaska and failed to object to the handling of the transaction through the mails. However, even if these facts were not sufficient to render a reasonable delay excusable, the defendant never made a demand for specific performance, nor was there ever any effort to tender title to the plaintiffs. Thus, the purchasers were never in legal default under the contract. They therefore had the right to put defendant in default, which they did by filing this suit for specific performance.
Defendant also contends that because the McGees never tendered the purchase price to the seller, under Sliman v. McBee, 311 So.2d 248 (La.1975) and La.C.C. Article 2549, the vendor is entitled to choose between the remedies of enforcement or dissolution of the contract. They argue that V. P. Peirret merely chose dissolution and therefore returned the deposit. The answer to this contention is that Article 2549, which declares that one of the buyer’s obligations is to pay the price of the sale, applies to a perfected contract of sale, not to a buy and sell agreement.
The first paragraph of Civil Code Article 2462 provides that:
“Art. 2462. A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immova-bles, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same.”
It does not, however, give rise to the same obligations as a perfected sale. The obligation hereunder, as to both parties, is to enter into a contract of sale at some future time. Furthermore, Sliman v. McBee, supra, involved a perfected credit sale as to which the purchaser failed to make timely payment to the seller. It is clearly inapplicable to the instant case. The prospective seller does not have the choice of enforcement or dissolution. Under the terms of the contract he has the choice of seeking specific performance or damages, but only in the event the purchasers are not willing to perform their obligation.
The defendant’s contention that the ap-pellees should be ordered to pay to it the difference between the original sales price and the current fair market value of. the property is untenable. The agreement remained viable after expiration of the time for transferring title. Since the vendor failed to put the vendees in default by tendering title to the property to them, pursuant to the terms of the contract, they had the right to put it in default, which they did by filing this suit. They are thus entitled to specific performance as prayed for. Fortenberry v. Decay, supra; Hammond Asphalt Company, Inc. v. Ponder, 303 So.2d 851 (La.App. 1st Cir. 1974); Luna, supra.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant-appellant.
AFFIRMED.