YELVERTON, Judge.
The owners of a .62 acre tract on Lake Arthur in Jefferson Davis Parish brought a declaratory judgment action to declare a buy and sell agreement terminated, and for damages caused by the purchaser recording the buy and sell agreement after it had expired and creating a cloud upon the title. The purchaser reconvened. The trial court gave judgment for the purchaser, ordering specific performance and awarding damages and attorney’s fees. The sellers appeal, and the purchaser answers the appeal seeking more damages. We reverse, finding that the contract terminated when by the purchaser’s fault the sale did not take place on time, and that the purchaser thereby forfeited his right to specific performance.
This case has been a long time reaching us. On April 14, 1980, Tom Redd and his wife made a written offer to purchase the property from Sharon H. Boullion, Rachael H. Breaux, Diana H. Thibodeaux, and Jacqueline H. Savoie for $65,000 in cash. The offer was in writing and was accepted by the four owners on that same date. The contract required the seller to deliver to the purchaser a merchantable title. The agreement to purchase and sell provided that an act of sale at the expense of the purchaser was to be passed on or prior to May 15, 1980, provided that if bonafide curative work in connection with title was required, the time for passing of the act of sale would be extended by 30 days. The contract additionally provided that the cost of any (new) survey would be paid by the purchaser, and that the purchaser was to deposit $2,000 with the sellers’ realtor agent. An additional provision on the realtor’s form agreement was the handwritten language: “This offer is binding only if purchaser can build a wharf into the Lake.”
The chronology of events after the signing of the contract goes like this: an abstract, completed on April 28, was delivered on May 6 to Henry R. Liles, attorney for the purchaser, Redd. On May 15, having completed an examination of the abstract, Liles called the real estate agent for the owners, and told him that there were title curative requirements. On May 22, 1980, he wrote a title opinion addressed to his client, the prospective purchaser Redd, with a copy to the real estate agent, indicating that some old problems in the chain of title needed correcting which could be done by two affidavits of possession establishing 30 years acquisitive prescription. No other title requirements were made in this opinion. The opinion recited that a 1967 survey of the property had been examined, and there were no requirements reflected by the survey.
*719 The day after this title opinion was written, May 23, 1980, Liles contacted a survey- or in Lake Arthur and requested that a new survey be run. In the meantime, the real estate agent for the owners procured the affidavits of possession, as required in the title opinion. These were mailed by the real estate agent to Mr. Liles on May 30, and were received by him shortly thereafter.
A new survey was completed and dated June 6, 1980. Sometime after June 6, Mr. Liles came into possession of this new survey. It showed discrepancies in the legal description, serious enough for correction, between the 1967 and 1980 surveys. Mr. Liles wrote a second title opinion letter dated June 11, saying that discrepancies existed and telling his client that he needed an explanation of these discrepancies from the sellers, adding that there might later be further requirements, such as boundary agreements, before the title could be accepted.
This title opinion, dated just three days before June 14, 1980, the expiration date of the contract, was not addressed to the owners, or to their real estate agent (at this time they did not have an attorney) but to Mr. Redd, the purchaser. There was some evidence, however, that the real estate agent, Mr. LeBlanc, came into possession of a copy of the opinion before the deadline for passing the sale expired, although it could not have been long before the deadline, because the letter was written on June 11 and the expiration date was June 14, a Saturday. There is also evidence in the record that the real estate agent had become aware of the newly emerged survey problem, because the surveyor’s stakes had raised the ire of an affected neighbor, a Mr. Theriot. On June 9, the agent, with the help of the surveyor and the neighbor, Mr. Theriot, had determined what the survey error consisted of and had reached an informal agreement with Mr. Theriot to execute a boundary agreement which they thought could have substantially eliminated the problem.
After writing the second title opinion letter on June 11,1980 (and perhaps sending a copy to the sellers’ real estate agent), the purchaser did nothing, and the time for execution of the agreement passed on June 14 without any demand by the buyer for completion of the act of sale.
On Monday, June 16, Attorney William J. Riley, III, of Lake Arthur, who had not previously been involved in the case, called the purchaser’s attorney, Mr. Liles, in Lake Charles, to see what could be done about curing the title defects and completing the sale, even though the time for executing the contract had passed. Mr. Riley explained that his clients were far behind on their mortgage indebtedness to a savings and loan, and they were anxious to sell the land so that they could stop the interest from accumulating. Riley said that his clients could get a boundary agreement. It was at this time that Mr. Liles injected a new requirement, a declaratory judgment proceeding, for the curing of all of the boundary problems created by the survey discrepancy. Riley objected to this, as it would be both costly and time consuming. After this conversation on June 16, both attorneys agreed that they would consult with their respective clients.
From that point on, negotiations degenerated. Attorney Liles testified that if his client could get a declaratory judgment, the purchaser would pay the interest on the sellers’ mortgage notes during the time required for obtaining the judgment. When the sellers refused this new offer, Mr. Liles retreated from his insistence on a declaratory judgment action and offered to accept boundary agreements, proposing also to do any further curative work at the purchaser’s expense. The sellers agreed to this, but on their part then wanted a reservation of the minerals, which the purchaser refused. Mr. Riley for the sellers insisted upon a reservation of the minerals, arguing that their contract to buy and sell ended on June 14 and that if a sale were to take place, a new contract would have to be made. Mr. Liles countered with the argument that his client had made the offer to buy under the suspensive condition that it *720 was binding only if he could build a wharf into the lake, that he had not yet obtained a permit from the Corps of Engineers for the wharf, and that he did not have to buy the property until the wharf permit was obtained. Mr. Liles argued that this suspen-sive provision somehow kept the buy and sell agreement alive beyond its stated expiration date.
On June 25, 1980, Riley told Liles that his clients, the sellers, no longer wished to discuss a contract because it had expired and that they did not want to negotiate a new one. Responding, Liles wrote Riley on June 25 advising him that his client did not accept any unilateral cancellation or voi-dance of the purchase agreement. He further said that his client had spent a large amount of money to obtain the title opinion, survey and a Corps of Engineers permit, which he declared was forthcoming. At about the time of this letter, Redd caused the buy and sell agreement to be recorded in the public records of Jefferson Davis Parish.
The recordation by Redd of the buy and sell agreement is what provoked this lawsuit.
In a July 17, 1980, letter from Mr. Liles to Mr. Riley, the purchaser, Redd, declared that he was putting the sellers in default.
Alleging that the time period for the purchaser to exercise his right to purchase the property had expired, through his own fault, the sellers filed suit on August 5, 1980, asking that the agreement to purchase or sell be declared null and void, and demanding damages and attorney’s fees occasioned by the filing of the buy-sell agreement in the public records, creating a cloud on their title. The purchaser countered with a reconventional demand for specific performance, damages, and attorney’s fees. After a five-day trial, in an opinion dated October 27, 1983, the trial court denied plaintiffs’ demands and granted those of the purchaser, Redd, awarding him specific performance. The trial court also awarded the purchaser $14,800 in damages, which the court calculated as being the rental value of the property at the rate of $400 per month from the date of judicial demand until the date of judgment. The trial court also awarded the purchaser the oil lease rental of $25 on the property, $578.66 for expenses for depositions and costs, all court costs, and the sum of $5,985 for attorney’s fees.
The sellers appealed this judgment, and the purchaser answered the appeal, asking for an increase in damages and attorney’s fees.
A fire later destroyed the improvements, consisting of one dwelling, on the property, and the purchaser filed a petition in the district court to determine the value of the now unimproved property for the purposes of the agreement to buy and sell in dispute here. After this determination, the contract was judicially reformed to recite a purchase price of $37,320, rather than the original $65,000, and a separate judgment was then rendered and signed.
Both sides also have appealed the latter judgment, contesting the evaluation of the property for contract purposes made by the trial court.
These are the judgments that are before us on appeal. We will decide both cases giving reasons in this opinion, but we will hand down separate judgments.
OPINION
In the present case the sale was to take place on May 15,1980, unless bonafide curative work was required, in which case the date of sale was extended for 30 days. Both the sellers and the buyer allowed that 30 days to pass without demanding performance of the other. Further, there was no agreement, in writing or otherwise, to extend the time. Unlike Hammond Asphalt Company, Inc. v. Ponder, 303 So.2d 851 (La.App. 1st Cir.1974), writ denied 307 So.2d 628 (1975), which was relied on by the trial judge, the delay in the execution of the contract was not the fault of the sellers. Counsel for the buyer admitted during oral argument that, due to the lateness of his title requirements regarding the survey, it was impossible for the sellers to *721 tender merchantable title during the remaining time (at most two days) under the contract. No explanation was given as to why this requirement came so late. The buy and sell agreement provided that the purchaser would bear the cost of a survey, but he did not order one until May 23, at which time the contract had already been in existence for five weeks and had only a short time to go. When the survey was received on June 6, it was not examined and the revealed description discrepancies noted until June 11. By that time it was simply too late for the sellers to comply, especially in view of the uncertainty in the minds of the parties, including Mr. Redd’s own attorney, as to what those curative requirements would eventually be. For these reasons the date for the execution of the contract passed with the sellers powerless to do anything about it.
The trial judge found, applying the Hammond Asphalt case, supra, that the sellers were at fault because they could not tender merchantable title within the time called for in the contract. This was error. There are several distinguishing facts between this case and Hammond Asphalt. In that case the sellers were timely notified of the title defects, there was an agreement to extend the time' to cure the defects, the sellers promised to do so but did nothing, the buyer was at all times ready, willing and anxious to complete the sale, and the sellers were put on notice by the purchaser before the time ran out that he wanted to enforce the contract. In our present case, the sellers were notified just two days before time ran out of additional, unanticipated, and incurable (at that late hour) title problems that could have been discovered and cured within the time had the purchaser moved with reasonable promptness in securing a survey. Further, there was no agreement between the parties to extend the time to cure the defects. The sellers in this case did everything they could; they had supplied the earlier curative requirements promptly, and they were making efforts to meet the subsequent requirements when the time ran out. Even after the contract expired the sellers were still willing to negotiate on a new agreement. This showed their good faith. The buyer, however, who had by his own tardiness prevented the sellers from being able to timely tender merchantable title, neither sought nor obtained an extension, preferring instead to rely upon his contention that the unfulfilled wharf permit suspen-sive condition somehow kept the agreement from becoming null and void.
This record abounds with evidence that does not depend upon credibility for its evaluation, denouncing the trial court’s opinion that “sellers ... have done everything possible to avoid carrying out the provisions of the buy and sell agreement.” That statement is clear error. If we were permitted to speculate about motives, we could find support in the record for the charge that the buyer was deliberately stalling the agreement to see if he was going to get a permit to build a wharf into the lake. However, there is no more reason to indulge in this speculation than there is to say that the sellers were trying to avoid their agreement. The facts show that the sellers did everything that they could. The facts show that, through no fault of their own, they could not convey a merchantable title by the time stated. On the other hand, the purchaser had not done all that was expected of him within the time stated, and when the time passed without the sale having been confected, he was in violation of the contract. Hammond Asphalt, supra. The sellers elected to return the deposit and declare the agreement null and void. The trial court should have rendered judgment in sellers’ favor.
This court recently said in Hebert v. Knoll, 370 So.2d 151 (La.App. 3rd Cir. 1979):
“[2] It has generally been held that where a prospective purchaser seeks to enforce his rights under a contract for the purchase of land, but has failed to appear before a notary for the purpose of executing the sale within the delay provided in the purchase agreement, then that purchaser is not entitled to specific performance of the agreement. Trans *722 continental Development Corporation v. Bruning, 195 So.2d 430 (La.App. 4th Cir.1967); Reine v. Kirn, [234 La. 923], 102 So.2d 66 (La.App. Orleans 1958); Rabin v. Whitney, 347 So.2d 1253 (La.App. 1st Cir.1977). This issue was specifically-addressed in DiCristina v. Weiser, 215 La. 1115, 42 So.2d 868 (1949). In that case, the contract provided that the parties had the right to specific performance if the sale was executed within a certain term. The court ruled that the failure to take title within the delay provided barred the purchaser’s right to specific performance. Furthermore, the court held that any extension of time for performance had to be written. See also: Bellestri v. Clark, 239 La. 713, 119 So.2d 836 (1960); Ezell v. Loucks, 167 So.2d 452 (La.App. 1st Cir.1964); LSA-C.C. Arts. 1913 and 2462.”
The court in Hebert v. Knoll, supra, went on to distinguish the Hammond Asphalt case by pointing out that there, the reason the court granted the purchaser specific performance of the contract to sell was because the delay in the execution of the contract was the fault of the seller, whereas, in its case, Hebert v. Knoll, it was the purchaser who had to be faulted for the sale never taking place, and his failure to make demand upon the sellers within the period prescribed by the contract was a forfeiture of his right to specific performance.
We reach the same result in the present case. It was Mr. Redd’s fault that the sale did not take place within the delay provided in the purchase agreement. He thereby lost his right to specific performance.
Having determined that the purchaser cannot recover, we now consider whether the sellers can. They sued for damages and attorney’s fees caused by the purchaser’s actions, including his filing of the agreement to buy and sell in the public records. This was a slander of title action, in which an owner is not permitted to recover absent a showing of actual malice and a showing of no probable cause. Dane v. Doucet Brothers Construction Company, Inc., 396 So.2d 418 (La.App. 4th Cir. 1981). There is no suggestion of actual malice here. The recordation, standing alone, did less damage than the following reconventional demand for specific performance, and we cannot say that that demand was without probable cause. No damages were proved based on slander of title.
Nor do the sellers have the right to damages and attorney’s fees under the agreement to buy and sell. The trial court held that damages and attorney’s fees were due the purchaser under this agreement. We disagree with this construction of the contract. When the agreement expired, the sellers returned the deposit to Redd since they were unable to tender merchantable title. There is no provision in the contract authorizing damages to either party.
The language in the contract relied on for attorney’s fees is:
“Either party hereto who fails to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agent’s commission and all fees and costs incurred in enforcing collection and damages. ”
This identical language was construed in Mahfouz v. Davidson, 422 So.2d 644 (La. App. 3rd Cir.1982), and found to apply only to the agent, having no reference to the right of the buyer or seller to get attorney’s fees. Sellers cannot recover attorney’s fees.
We shall, however, exercise our discretion and award all costs to the sellers. The fault of the purchaser was the primary fault in permitting the contract to expire without execution, and the filing in the public records of the agreement to buy and sell after it had expired made necessary the following litigation; hence, we believe that that party should bear the full burden of the costs in this case.
The sellers complained that it was also error on the trial court’s part to hear and consider the testimony of Mr. Liles, who was both the trial attorney and one of the prime witnesses in the case for Mr. Redd, the purchaser. The sellers complained that *723 after Mr. Liles tried the case,- in which all witnesses were sequestered at his request, he then became the final witness for Redd, testifying at length as to many of the details concerning which there were perceived to be some conflicts in earlier testimony. For the reason that he was not sequestered during the trial, and also for the reason that an attorney’s testimony under these circumstances are in ostensible violation of the disciplinary rules of the Louisiana State Bar Association, counsel for sellers have asked us to strike and not consider the testimony of Mr. Liles in its entirety.
In view of the result which we have reached, since sellers were not prejudiced by the testimony of Mr. Liles, we need not consider this assignment of error.
For the reasons assigned, the judgment of the trial court herein declaring the buy and sell agreement a valid and enforceable obligation of sellers is reversed and set aside; the judgment awarding damages, attorney’s fees, and costs to the purchaser, Tom Redd, is reversed. Judgment is rendered in favor of the original plaintiff, the sellers, declaring the agreement to buy and sell null and void; judgment is rendered rejecting the sellers’ demand for damages and attorney’s fees; judgment is rendered ordering that all costs in the court below and on appeal be paid by Tom Redd, defendant-reconvenor; and judgment is finally rendered ordering the cancellation of the now null and void agreement to buy and sell from the public records.
REVERSED AND RENDERED.