**MUIRFIELD (DELAWARE), L.P. and Muirfield Management, Inc.**

v.

**PITTS, INC., et al.**

**Civil Action No. 98–0321–A.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

July 20, 1998.

Frank Voelker, Jr., Thomas A. Roberts, McGlinchey Stafford, New Orleans, LA, for Plaintiffs.

William D. Brown, Brown & Wicker, Monroe, LA, James E. Paxton, D.A.'s Office 6th JDC, St Joseph, LA, for Defendants.

## RULING

SCOTT, Senior District Judge.

### I. Introduction

Before us by referral is a Motion To Dismiss under Fed.R.Civ.P. 12(b)(1), (6), and (7) for lack of subject matter jurisdiction, failure to state a claim, and failure to join indispensable parties. Jurisdiction in this breach of contract case is initially premised on diversity of citizenship, 28 U.S.C. § 1332. For the reasons discussed below, the motion is **DENIED.**

1. RLP and Ark–La are not parties to this litigation.

2. The solvent entity set up by Pitts is defendant Red Oak Farms, Inc. ("Red Oak"), a Louisiana

### II. Factual Background

This suit arises out of the alleged failure of the defendants, Pitts, Inc. ("Pitts") and Red Oak Farms, Inc. ("Red Oak"), to perform under a letter agreement with the plaintiffs, Muirfield (Delaware), L.P. ("MD") and Muirfield Management, Inc. ("MMI"). The agreement was intended to resolve differences between the parties with respect to two partnerships owned jointly by them—Resources and Land Partnership ("RLP") and Ark–La Resources L.P. ("Ark–La").[1]

RLP and Ark–La were formed to acquire and sell land consistent with a policy of wildlife habitat conservation. However, disagreements among the plaintiff and defendant parties regarding management of RLP and Ark–La resulted in "seemingly endless" litigation, and ultimately a desire to settle all disagreements.

In January 1998, Pitts, MD and MMI signed a letter agreement stating that Ark–La would be dissolved and that, among other things, Pitts, or a solvent entity designated by Pitts, would purchase MD's interest in RLP and place conservation servitudes on all property thus acquired.[2] The purchase price was to be approximately $2–million.

The letter agreement, signed by Pitts, MD and MMI, called for a closing on or about February 7, 1998. The closing date was subsequently extended to February 20, 1998 by mutual agreement. However, as the time for closing drew near, Pitts and Red Oak were allegedly reticent to impose the conservation servitudes, and the closing never occurred. The Muirfield entities brought this breach of contract action seeking specific performance of the letter agreement.

### a. The Subject Partnerships[3]

RLP, the limited partnership to be bought out by Red Oak from MD, is a partnership organized under the laws of Mississippi. It has two 50% general partners—defendant Pitts and plaintiff MD. RLP's only assets consist of approximately 10,000 acres of land

corporation with its principle place of business in Concordia Parish, Louisiana.

3. Recall again that neither RLP nor Ark–La is a party to this litigation.

in Louisiana, less the mineral rights thereunder which are owned by Ark–La, and mineral rights in Arkansas. The land in Louisiana apparently is not the subject of any commercial activity (i.e., it is a passive investment).

Ark–La, a limited partnership also organized under the laws of Mississippi, has as its partners MMI, which is a 0.5% general partner, Pitts, which is a 50% general partner, and five private trusts set up in Virginia, each holding a 9.9% limited partner's interest. Ark–La's only assets are the mineral rights to the 10,000 acres of land in Louisiana described above and owned by RLP.

### b. The General Partners Behind RLP and Ark–La

#### 1. Muirfield Management, Inc.

MMI is a corporation organized under the laws of Mississippi. MMI's only assets consist of cash in a Virginia bank, a 0.5% general partner's interest in Ark–La, and a 1% general partner's interest in MD. MMI performs management functions for Ark–La and Muirfield (Delaware).

One of the central issues in the Motion before us is the principle place of business of MMI, which will determine the existence of proper diversity jurisdiction under these facts. Aside from its indirect ownership of land and mineral rights in Louisiana through Ark–La, RLP, and MD, MMI has no assets in Louisiana. It has no offices or agents in Louisiana, and has never entered into a contract in Louisiana. MMI consists of one director, four officers, and one shareholder, all of whom are citizens and residents of Virginia. MMI has no employees. Michael Crane, the president, director, and sole shareholder of MMI, is a citizen and resident of Virginia, and performs all of his duties with respect to MMI from his offices in Middleburg, Virginia. The same is true for the vice president of MMI. All of MMI's financial affairs are conducted in Louisiana, as are all of its corporate meetings. All policies and decisions with respect to MMI occur in Virginia.

#### 2. Muirfield (Delaware), L.P.

MD is a limited partnership organized under the laws of Delaware. The partners are MMI, with a 1% general partner's interest, and five private trusts as limited partners, each of whom has as a beneficiary a citizen of Virginia. MD's only asset is a 50% general partner's interest in RLP, which, as previously mentioned, has as its sole assets land in Louisiana and mineral rights in Arkansas.

#### 3. Pitts, Inc.

Pitts is incorporated in Louisiana, and its primary assets include 50% general partner's interests in Ark–La and RLP. As with MMI, Pitts' principle place of business is central to resolution of this Motion. Pitts' only offices are located in Ferriday, Louisiana. All three of Pitts' officers and directors are citizens and residents of Louisiana—Pitts' president, Ray Pitts, vice president, Rena Pitts, and director, Hal Scott, are all citizens of Louisiana and residents of Concordia Parish, Louisiana. Rena Pitts is also the sole shareholder of the company. Pitts' registered address and registered agent are in Louisiana. All meetings and decisions regarding Pitts are made in Louisiana, and all of Pitts' bank accounts and books are in Louisiana. Pitts' only contact with Mississippi is through its partnership interest in RLP and Ark–La, which were formed under the laws of Mississippi. Aside from the fact that RLP and Ark–La were organized under the laws of Mississippi, Pitts has no other contacts with that state. Furthermore, Pitts apparently has no contacts with Virginia.

#### 4. Red Oak Farms, Inc.

Lastly, Red Oak is the entity designated by Pitts to effectuate the purchase of MD's interest in RLP. Red Oak is incorporated under the laws of Louisiana, and has its principle place of business in Concordia Parish, Louisiana.

### III. Law and Analysis

#### a. Subject Matter Jurisdiction— Diversity

Plaintiff MMI, a Mississippi corporation, avers that its principle place of business is Middleburg, Virginia. The defendants contend that MMI shares Louisiana or Mississippi as its principle place of business with at least one of the defendants, thus destroying complete diversity. For reasons discussed herein, we find the argument meritless and

**DENY** the Motion To Dismiss based on lack of subject matter jurisdiction.

■ Unlike a Motion for Summary Judgment or a Motion To Dismiss for failure to state a claim, a Motion To Dismiss premised on a lack of subject matter jurisdiction deals not with the merits of a case, but with the power of the court to hear a dispute. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 at p. 89 (2d ed. Supp.1998). Thus, the standard under 12(b)(1) is not deferential—argumentative inferences will not be made in favor of any party. "[U]pon a challenge to the court's jurisdiction by a party, the court should conduct a careful inquiry and make a conclusive determination whether it has subject matter jurisdiction or not...." *Id.* The party asserting jurisdiction has the burden of proof. Wright & Miller, § 1350 at p. 226 (2d ed.1990). Finally, determination of the jurisdictional question is not limited to the face of the complaint, but may be supplemented by affidavits and other evidence. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); Wright & Miller at 213–17.

■ For purposes of diversity jurisdiction, a corporation has dual citizenship—its state of incorporation and its principal place of business. 28 U.S.C. § 1332(c)(1). As MMI and Pitts were incorporated in different states (Mississippi and Louisiana, respectively), we are concerned only with their principal places of business.

The Fifth Circuit defined the "total activity" test for principal place of business in *J.A. Olson Co. v. City of Winona, Miss.*:

(1) when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business ...; (2) when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant ...; but (3) when the activity of a corporation is passive and the "brain" of the corporation is in another state, the situs of the corporation's "brain" is given greater significance....

818 F.2d 401, 411 (5th Cir.1987) (citations omitted). The Court described the determination of principal place of business as "fact-intensive," *Id.* at 412 n. 15, and thus such decisions are made *ad hoc.*

Factors cited by the court in evaluating the "activity" of a corporation include: whether the nature of the business is active or passive, labor-intensive or management-demanding; the number of locations in which a corporation carries on its business; the importance of the activity in question to the corporation as a whole; and the extent of local contacts the corporation has with the community, including "the number of employees in the given locale and the extent to which the corporation participates in the community through purchase of products, supplies and services, sales of finished goods, and membership in local trade or other organizations." *Id.* at 411–12.

In assessing the "nerve center" of a corporation, the court saw as important "the exclusivity of decision making of the nerve center and the degree of autonomy delegated to other locations." *Id.* at 412. Most importantly for our purposes, "nerve-center considerations take on added significance when the activities of the corporation are far-flung or passive or management-oriented as opposed to labor intensive activities." *Id.*

We first address the defendants' contention that MMI has Louisiana as its principal places of business, since that argument would *seem* to have the most merit. The defendants make the point that, since the bulk of the *res* of MMI's business is indirect ownership of property rights in Louisiana, MMI must therefore have Louisiana as its principal place of business. Were this true, subject matter jurisdiction by way of diversity would be destroyed since all of the defendants are citizens of Louisiana. However, this is not true.

■ In considering the facts before us as well as the guidance laid down by the Fifth Circuit in *J.A. Olson,* we conclude that MMI's principal place of business is Middleburg, Virginia. MMI's business is management-oriented, and the partnerships it owns and manages are involved in passive ef-

forts—the purchasing, holding, leasing, and selling of land. This is not the type of business that can properly be characterized as "active." On the contrary, the type of business in which MMI is engaged has traditionally been characterized as "passive," and courts have looked not at the *situs* of the asset, but at the *situs* of the company's management functions. *See, e.g., Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.,* 138 F.3d 160, 164 (5th Cir.1998) (holding that ownership of a golf and country club was passive); *Village Fair Shopping Center Co. v. Sam Broadhead Trust,* 588 F.2d 431 (5th Cir.1979) (holding that owning a shopping center was passive). Thus, we look to the third test prescribed by *J.A. Olson* —"when the activity of a corporation is passive and the 'brain' of the corporation is in another state, the situs of the corporation's 'brain' is given greater significance. . . ." 818 F.2d at 411 (citation omitted).

With that caveat in mind, it is patently obvious that MMI's "brain" is in Middleburg, Virginia. The affidavit of John Gordon, vice-president of MMI, reflects that every conceivable activity with respect to acquiring, owning, and managing MMI's assets occurs in Virginia. MMI has no local contact or presence with or in Louisiana; it has no employees in Louisiana; it is not registered to do business in Louisiana. It is hardly conceivable that MMI could have any *less* of a presence in Louisiana. On the contrary, MMI runs its affairs exclusively out of its Middleburg, Virginia offices. It is unnecessary to recite the litany of connections MMI has with Virginia; we find that MMI's principle place of business is Middleburg, Virginia, not, as alleged by the defendants, anywhere in the State of Louisiana.

Next we dispose of the defendants' allegation that Pitts shares Mississippi principle-place-of-business citizenship with MMI. Put simply, *no* party has Mississippi as its principle place of business. True, MMI was incorporated in Mississippi, and thus it is a citizen of Mississippi for purposes of diversity jurisdiction, but that is where the connection ends. MMI does not conduct its affairs in Mississippi, and Pitts does not conduct its affairs in Mississippi. Neither party has assets, offices, employees, or any other type of presence in that state.

■ That Pitts owns general partner's interests in two limited partnerships (RLP and Ark–La) organized under the laws of Mississippi is irrelevant to our analysis. A limited partnership does not define the citizenship of its partners; rather, it is the partners that define the citizenship of the partnership. *Carden v. Arkoma Assocs.,* 494 U.S. 185, 195–96, 110 S.Ct. 1015, 1021, 108 L.Ed.2d 157 (1990). Ironically, given that premise, not even RLP and Ark–La, both organized under the laws of Mississippi, are citizens of Mississippi. For these reasons, the Motion To Dismiss for lack of complete diversity is **DENIED.**

### b. Failure To State a Claim

When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, the court is to accept the plaintiff's factual allegations as true. *Buckley v. Fitzsimmons,* 509 U.S. 259, 261, 113 S.Ct. 2606, 2609, 125 L.Ed.2d 209 (1993); *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th cir. 1995). The court cannot grant a 12(b)(6) motion to dismiss unless the alleged facts indicate that the plaintiff has failed to state a claim upon which relief can be granted. *Id.* When determining whether relief can be granted based on the facts as alleged, the court does not look past the face of the pleadings, *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.,* 937 F.2d 274, 279 (5th Cir.1991), and must construe all factual allegations in the light most favorable to the plaintiffs, *Rubinstein v. Collins,* 20 F.3d 160, 166 (5th Cir.1994).

■ Because the January 1998 letter agreement does not specify, we must initially determine which state's laws will govern the rights and obligation under the letter agreement. "In making choice of law determinations, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting." *Rocky Mountain Helicopters, Inc. v. Bell Helicopter Textron, Inc.,* 24 F.3d 125, 128 (10th Cir.1994) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)). Hence,

Louisiana's laws will guide our choice-of-law analysis.

■ In Louisiana, a breach-of-contract case "is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ.Code Ann. art. 3537 (West 1994). Article 3537 advises:

That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) ... the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

The letter agreement justifiably could be governed by the laws of Virginia, Louisiana, or Mississippi. Virginia's interests in this agreement include: MMI and MD are both domiciliaries of Virginia; presumably half of the agreement's negotiation occurred in Virginia; and much of the performance required in the letter agreement will occur in Virginia, such as the issuance of general releases, the splitting of partnership assets, and the purchase of MD's interest in RLP.

Louisiana also has strong interests in the performance of the letter agreement. If half of the negotiations occurred in Virginia, then the other half occurred in Louisiana where all the defendants are domiciled. Furthermore, many of the agreement's provisions, such as the issuance of general releases and the splitting of partnership assets, apply equally to the defendants. Therefore, as between Virginia and Louisiana, the factors discussed thus far are a wash—none is more determinative than any other.

What remains then are Mississippi's interests in Ark–La and RLP, both of which were organized under the laws of Mississippi, and Louisiana's interests in the real property on which conservation servitudes are to be placed. If the plaintiffs are granted specific performance, Mississippi law will govern the dissolution of Ark–La, and Louisiana law will govern the imposition of conservation servitudes on the real property located therein. We find Louisiana's interest in the regulation of its real property to be the overriding interest here. As evidenced by the relatively quick disintegration of RLP and Ark–La, business entities come and go. Mississippi's interest, therefore, are important but fleeting. On the other hand, the effects of altering the deed to real property, such as by placing conservation servitudes upon it, last ad infinitum. Thus, Louisiana's interest in its real property, coupled with its being the *situs* of a good deal of performance, as well as the domicile of the Defendants and the state where the negotiations and possibly the acceptance of the letter agreement occurred, override the other states' interests, and we will apply Louisiana substantive law to determine whether the plaintiffs state a claim upon which relief can be granted.

■ The defendants contend that the closing date specified in the original letter agreement (on or about February 7) was a suspensive condition on the performance of the agreement, meaning that when the parties failed to close by that date, all performance was excused and the agreement became unenforceable.

The defendants' argument is without merit. The letter agreement specifies "this letter and the offer contained herein, if accepted by Pitts, shall constitute a binding agreement with respect to all claims." The agreement also specifies that "[f]ull and final closing on all of the above [provisions] shall take place within thirty (30) days of the date hereof [being January 7, 1998], time being of the essence."

"Legal agreements have the effect of law between the parties and it is the duty of the courts to enforce contracts in accordance with the true intent of the parties." *Rabin v. Whitney,* 347 So.2d 1253, 1254 (La.Ct.App. 1977) (citation omitted). Nothing could be clearer than the fact that, when Rena Pitts signed the letter agreement on behalf of Pitts, Inc., she accepted all of the terms of the letter agreement, including the term

specifying that time was of the essence. This is the plain intent of the parties, and we must reject the contention that, though "closing ... *shall* take place within thirty (30) days," the provision for time of closing actually created a suspensive condition. There is nothing conditional about the word shall. Rather, the time provision creates an express term, or time for performance. La. Civ.Code art. 1777.

We find support for our conclusion in *Hammond Asphalt Co., Inc. v. Ponder*, 303 So.2d 851 (La.Ct.App.1974). In that case, the parties contracted for the sale of land, and specified in the contract that the sale was to occur on or before January 5, 1972. *Id.* at 852. When the sale was not consummated and the purchaser sued, the vendor asserted the same argument asserted by the defendants herein, namely that "the agreement is unenforceable because the sale was not passed within the specified time which has now elapsed...." *Id.* at 853. The court rejected the argument, saying "the specified date for passage of the sale was not a condition precedent to passage, but rather constituted a term to which the parties mutually agreed. If the sale were not passed by the time stated, either or both parties would have been in violation of the contract." *Id.* at 854.

The same is true here, where the innocent party, regardless of whether it be Pitts or one of the Muirfield entities, would have had the right to seek specific performance upon the other party's failure to close by the specified time. There is an important reason for this rule. Were the opposite true, it would be impossible for parties to specify a time for performance because inevitably the faulty logic propounded by the defendants would creep in. It is no friend of commercial contracts to allow a party to ignore their obligations under a contract and then excuse their mandatory performance simply because they chose not to perform by the date their performance was due. Thus, the Motion To Dismiss for failure to state a claim is **DENIED**.

4. Rule 19 governs whether a party is indispensable in a diversity case. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125

### c. *Failure To Join Indispensable Parties*

"In a diversity case, the question of joinder is one of federal law. State law is relevant 'in determining what interest the outsider actually has, but the ultimate question whether, given those state-defined interests, a federal court may proceed without the outsider is a federal matter.'" *Shell Western E & P Inc. v. Dupont*, 152 F.R.D. 82, 85 (M.D.La.1993) (citations omitted).

When considering a Motion To Dismiss under Fed.R.Civ.P. 12(b)(7) and 19,[4] we must first determine whether an entity should be joined if feasible. An entity should be joined if feasible if their joinder is necessary to accord complete relief among those already parties, to protect the unjoined party's interests, or if their absence would leave the existing parties "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed.R.Civ.P. 19(a). If an entity should be joined if feasible under the 19(a) analysis, the court will either order their joinder, or, if that is not possible, proceed to the 19(b) analysis to determine whether the action can proceed without the person.

The Rule 19(b) analysis is used by the court to determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus being regarded as indispensable." Rule 19(b) provides a four factor analysis to determine whether a party is indispensable to litigation:

(1) to what extent a judgment rendered in the party's absence might be prejudicial to that party or others in the lawsuit; (2) the extent to which, by protective provisions in the judgment, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the party's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the party cannot be joined.

n. 22, 88 S.Ct. 733, 746 n. 22, 19 L.Ed.2d 936 (1968).

The defendants contend that RLP and Ark–La are indispensable parties because, if the letter agreement is enforced, the terms of the agreement will effect the two subject partnerships in various ways, including the dissolution of one, Ark–La, and the buyout of the other, RLP, by Pitts from MD. The defendants showcase a parade of horribles that will result if RLP and Ark–La are not joined, including "total confusion about the mechanics of the sale of the partnership interest [in RLP] to Pitts," an inability of the court to bind the absent partnerships and force their compliance with the terms of the letter agreement, concerns about proper dissolution and distribution, · etc. However, while it is true that "[t]hese two partnerships are at the heart of the letter agreement," it does not follow that they are indispensable parties.

The Fifth Circuit has been silent with respect to the precise issues at bar: whether the partnership is an indispensable party when general partners sue each other for breach of side agreements pertaining to the partnership; and whether such an action would be derivative, direct, or "none of the above" (i.e., not arising out of the partnership agreement or the partnership relationship). As more fully set forth below, we hold that such a side agreement does not arise out of the partnership agreement or relationship, and that the subject partnerships are not indispensable.

■ Claims arising from breach of a partnership agreement or breach of some other duty stemming from the partnership relationship may be derivative or direct. The characterization depends on whether the partner individually or the partnership as a separate entity suffered the injury. *Mallia v. PaineWebber, Inc.*, 889 F.Supp. 277, 283 (S.D.Tex.1995). Derivative claims include fraud on the partnership, breach of an agreement between the partnership and a third party, waste, and damage to or interference with partnership property. IV Alan R. Bromberg and Larry E. Ribstein, Bromberg and Ribstein on Partnership § 15.04(g)

(1998). Direct claims include fraudulent inducement to become a partner, failure to share partnership profits, conversion of partner's interest by unauthorized disposition of all partnership assets, and dissolution and winding up by court decree. *Id.* at § 15.04(f).

■ The Fifth Circuit has held that the partnership itself is an indispensable party when a limited partner asserts derivative theories against a general partner, *Bankston v. Burch*, 27 F.3d 164, 167–68 (5th Cir. 1994);[5] *see also Whalen v. Carter*, 954 F.2d 1087, 1096–97 (5th Cir.1992). Direct actions by limited or general partners, however, render the partnership a fully dispensable party. *Cf.* Bromberg and Ribstein § 5.04(d). Regardless of whether the action is derivative or direct, the commonality is that these types of actions arise from some obligation created by the partnership agreement or the partnership relationship.

■ The case at bar, however, is an entirely different species. The plaintiffs' cause of action is neither derivative nor direct—it cannot be characterized in terms of partnership theory. Though rife with the scent of partnership law, this dispute actually concerns breach of a private contractual agreement between the parties herein, independent of any partnership-derived obligations. Rather, the plaintiffs' cause of action arises from breach of the letter agreement which created obligations of the defendants in their individual, rather than partner, capacities. This is not an action to dissolve a partnership, but to enforce a private contractual agreement between partners. Thus, any breach by the defendants offends only general contract theories, rather than the partnership agreements or the partnership laws of Mississippi.

This is true even though the letter agreement deals exclusively with RLP and Ark–La, and even though all parties to the agreement and to this case happen to be the general partners of RLP and Ark–La. These facts do not transform an otherwise-

5. That the plaintiff in *Bankston* was a limited partner is of no consequence to the analysis, as the partnership is still an indispensable party even if the derivative claims are asserted by a general partner. Bromberg and Ribstein § 15.05(b).

ordinary contract dispute into something that must be, or even can be, analyzed in terms of partnership law.[6]

Having decided that, we now proceed to our Rule 19 analysis to determine whether RLP and Ark–La are indispensable parties. We hold that neither partnership even falls into the category of an entity that should be joined if feasible. Since all general partners are before us, any order of specific performance will not be left wanting for parties to bind. The partnerships are artificial entities that act through their general partners. If we order specific performance, it is the parties before us that will effectuate the buyout, the dissolution, and the other aspects of the letter agreement. In addition, neither partnership has any rights or interest in one of the major components of the agreement—the buyout of MD's interest in RLP by Pitts. Furthermore, as the parties before us were the only parties to the letter agreement, no other party could assert the rights and obligations contained therein. Finally, any interest of RLP and Ark–La is adequately represented by the presence of all general partners. Therefore, since the absent entities' interests are adequately represented, and since the parties before us can not possibly be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest," Fed.R.Civ.P. 19(a), we conclude that RLP and Ark–La are not indispensable parties that must be joined under Rule 19. We therefore **DENY** the Motion To Dismiss for failure to join indispensable parties.

6. We note, though, that had the plaintiffs chosen to seek redress for the alleged wrongs which lead up to the letter agreement (i.e., mismanagement and failure to comply with the partnership agreements by resisting the environmental servitudes on the Louisiana property), we would then be in the partnership realm and it would be appropriate to discuss direct and derivative actions.