**Emile J. KINLER and Mrs. Gladys Brown Kinler, Appellants,**

v.

**Harvey D. GRIFFEN and Elsie A. Cassagne, wife of Harvey D. Griffen, Appellees.**

No. 16790.

United States Court of Appeals Fifth Circuit.

Jan. 30, 1958.

Rehearing Denied Feb. 28, 1958.

Sidney W. Provensal, Slidell, La., for appellants.

Rene Lehmann, New Orleans, La., Philip E. Pfeffer, Covington, La., Midlo & Lehmann, New Orleans, La., for appellees.

Before RIVES, BROWN, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This appeal involves the rights of vendors and vendees of Louisiana real estate when a proposed sale falls through because of inability of the vendor to cure alleged title defects. Specifically, the question is the right of the vendee to recover double the deposit.

Appellants, Mr. and Mrs. Emile J. Kinler, agreed to sell certain real estate in St. Tammany Parish, Louisiana, to Mr. and Mrs. Harvey D. Griffen, appellees, for $25,000. In accordance with the contract, dated April 25, 1955, the Griffens made a deposit of $2,500. with the real estate agents handling the proposed sale. The agreement to sell required the act of sale to be passed before Philip E. Pfeffer, Notary Public, within ninety days after the date of the agreement.

The written agreement contained the following clause:

"In the event that the vendor does not comply with this agreement to sell within the time specified, purchaser shall have the right either

to demand the return of double the deposit, or specific performance, however in event any minor defects or irregularities should be found in the title by the examining attorney, the vendor shall be given a reasonable opportunity to cure such defects at the vendors (sic) expense and the purchaser hereby agrees to extend the term of this contract for the purpose of perfecting title."

It provided also:

"Either party hereto who fails to comply with the terms of this offer, if accepted, is obligated to pay the Agent's Commission and all fees and cost incurred in enforcing collection and damages."

Pfeffer examined the title and discovered two defects. (1) One was a judgment in 1929 by the 22nd Judicial District Court for the Parish of St. Tammany in the Succession of Theodule Claverie putting the decedent's forced heirs and legal representatives (eighteen persons) in possession of a one-half undivided interest in approximately 250 acres containing the property in dispute in this case. These eighteen "sole, forced heirs and legal representatives" were never divested of their apparent interest. Claverie had acquired his interest from Etienne Alpuente by act of sale dated October 16, 1855. (2) The other alleged defect was based on the fact that an interest in the property, in the line of succession stemming from Alpuente, was acquired by a Mrs. Ernest Bayard with her separate funds but was sold by her without the authorization of her husband, contrary to Louisiana Law.

Pfeffer refused to approve the title unless the alleged defects were cured. The Kinlers then made an unsuccessful attempt to purchase title insurance from the Lawyers Title Company. By letter dated July 25, 1955, the last day on which title should have been passed, the vendors informed the vendees that the defects could not be cured because (1) they had no knowledge of the whereabouts of Mr. Bayard or his heirs, for purposes of obtaining a quit-claim and, (2) quit-claim deeds from eighteen or more Claverie heirs, and heirs of heirs, were out of the question. Nevertheless, the Kinlers, succeeding in locating Mr. Bayard, obtained from him a quit-claim deed dated September 29, 1955, some two months after the expiration date of the agreement to deliver title, and tendered this deed to the vendees as curative of one of the title defects.

It is unnecessary to speculate on whether Bayard's failure to authorize his wife's sale was a major or minor defect; or whether the Kinlers' furnishing a quit-claim from Bayard two months after the last day for the act of sale cured the defect within the life of the extended (if extended) contract.[1]

The existence of an outstanding judgment of possession is enough in itself to constitute a major defect in a title and to render the title unmerchantable. The vendors in effect admit the validity of this principle but deny its application in this case, because

1. Under Louisiana law, any property acquired during the marriage in the name of either spouse is presumed to be community property. LSA–Civil Code, Art. 2402. In Johnson v. Johnson, 1948, 213 La. 1092, 36 So.2d 396, 398, certain property had been acquired by a married woman while married but separated from her husband. The Louisiana Supreme Court held that "under the jurisprudence of this state, defendant [against whom a prospective vendor brought a suit for specific performance] was justified in refusing to accept title to this property by act of sale signed by Mrs. Johnson without being joined by her husband". See also Bachino v. Coste, 1883, 35 La.Ann. 570. However, in the Bachino case the husband was dead at the time of suit and in the Johnson case a quit-claim from the husband was not tendered until nearly a year after suit was filed. A declaration in the act of sale that property has been purchased with separate funds may estop a husband who is signatory to the act, but will not bind forced heirs or creditors of the husband. LSA–Civil Code, Art. 2239. Succession of Valdez, La.App.1950, 44 So.2d 151; Pfister v. Casso, 1926, 161 La. 940, 109 So. 770.

the Claverie judgment was twenty-six years old at the time of the suit and Claverie has been dead since 1874. They argue that they have good prescriptive title by possession for ten years in good faith and under color of title[2] and also by possession for thirty years.[3] In addition, they rely on thirty years having elapsed between the death of Theodule Claverie and judgment putting the heirs in possession and on twenty-two years having elapsed between the judgment and the present proposed sale.[4]

■ It is settled in Louisiana that a prospective purchaser cannot be made to accept a title that is suggestive of future litigation. The test is not whether the outstanding claim is well-founded, but whether the claim presents a possibility of future serious litigation. Schaub v. O'Quin, 1948, 214 La. 424, 38 So.2d 63; Rodriguez v. Schroeder, La.App.1955, 77 So.2d 216; Johnson v. Johnson, supra.

■ In some future action to quiet title, the Kinlers may establish their right to the property in question by proving good prescriptive title. Tender now of their title is not tender of a merchantable title. The Louisiana Supreme Court holds that, in a suit for specific performance, "[T]his Court is in no position to pass on the question of the prescriptive title because the adverse parties in the conflicting chain of title are not parties to this suit and any decision we might render would not be binding on them. Praegner v. Kinnebrew & Ratcliff, 156 La. 132, 100 So. 247. The defendant cannot be compelled to accept a title to land upon which a claim rests and which is suggestive of future litigation. Marsh v. Lorimer, 164 La. 175, 113 So. 808." Lear v. Great National Development Co., Inc., 1949, 215 La. 749, 41 So.2d 668, 669.

■■ In a lay sense, it was not the Kinlers' fault that they were unable to fulfill their obligation of tendering good and merchantable title. There was no fraud and no bad faith, nothing arbitrary and nothing capricious in their non-performance. They contend therefore, that the penalty of returning double the deposit is unreasonable and should be ignored; that the deposit was earnest money. Until recently, Louisiana jurisprudence was in conflict as to whether the penalties in an agreement to sell were applicable to a good faith vendor unable to deliver a merchantable title. The Louisiana Supreme Court now holds, however that, by virtue of the contract, the vendee is entitled to a return of double the deposit notwithstanding the vendor's good faith; the deposit was not earnest money, since the right to specific performance was reserved. Ducuy v. Falgoust, 1955, 228 La. 533, 83 So.2d 118.[5]

---

2. "He who acquires an immovable in good faith and by just title prescribes for it in ten years. This prescription shall run against interdicts, married women, absentees and all others now excepted by law; and as to minors this prescription shall accrue and apply in twenty-two years from the date of the birth of said minor; provided that this prescription once it has begun to run against a party shall not be interrupted in favor of any minor heirs of said party." LSA–Civil Code Art. 3478.

3. "The faculty of accepting or renouncing a succession becomes barred by the lapse of time required for the longest prescription of the rights to immovables." LSA–Civil Code Art. 1030. "All actions for immovable property, or for an entire estate, as a succession, are prescribed by thirty years." LSA–Civil Code Art. 3548.

4. See footnote 3.

5. "A deposit of earnest money gives the obligor the choice of performing or forfeiting the amount of the deposit, whereas, in the case before the court [Ducuy v. Falgoust], the obligee was given the choice of claiming specific performance or declaring a forfeiture. In either case, however, the amount of the deposit constitutes a liquidation of the damages that otherwise would be recoverable for non-performance. Hence, even if only the party as against whom a breach may be committed may have the choice of treating a deposit as earnest money, its basic character as a substitute for a determination of actual damages would not seem to be changed. Presumably, any defense that would be adequate against a claim for liquidated damages would also be adequate against a simple claim for damages. From this point of view, the

See also Caplan v. Airport Properties, 1957, 231 La. 1071, 93 So.2d 661.

The appellees are entitled to double the deposit, plus the expenses and attorney's fees.

The judgment is
Affirmed.

court was called upon to determine whether damages may be recovered against a seller who is unable, for lack of merchantable title, to perform although he has undertaken in good faith to do so. * * * In conclusion, the court's action in permitting the purchaser in Ducuy v. Falgoust to recover from the good faith seller the sum set up as a forfeit is entirely consistent with the protection afforded a purchaser under the general rules relating to the re-

covery of damages for a good faith breach of contract by the seller. Although the court distinguished certain fairly late cases dealing with earnest money, where an inconsistent view was taken, there was solid support for its position in an earlier case that involved a deposit made expressly as earnest money." Smith, Recovery of Damages for Non-Delivery and Eviction, 17 La.L. Rev. 254, 255, 271 (1957).