728 So.2d 1046 (1999)
Tomas Coronado DELEON and Linda Coronado Deleon, Plaintiffs-Appellants,
v.
WSIS, INC. and George Williams, Defendants-Appellees.
No. 31,602-CA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1999.
Brian C. McRae, Counsel for Appellant.
D. Scott Brown, Steven R. Thomas, Mansfield, Counsel for Appellee.
Before GASKINS, KOSTELKA and DREW, JJ.
*1047 GASKINS, Judge.
The plaintiffs, Tomas Coronado Deleon and his wife, Linda Coronado Deleon, appeal from a trial court judgment rejecting their demand for specific performance of a contract to sell immovable property. For the following reasons, we reverse the trial court judgment.

FACTS
The defendants in this case are WSIS, Inc. (WSIS) and its president, George W. Williams. The corporation owned a tract of property in DeSoto Parish containing approximately 13.34 acres, with a mobile home. On October 10, 1995, WSIS listed the property for sale with Veterans Realty, through its real estate agent, Jim Norsworthy. On March 13, 1996, the plaintiffs and WSIS, through Mr. Williams, entered into a contract to buy and sell the property. The agreement provided that the plaintiffs would purchase the property for $39,000.00, with $200.00 deposited with the realtor, $6,300.00 in cash to be paid at closing, and the remainder to be financed by the seller for fifteen years at eight percent interest. The seller, WSIS, agreed to pay the closing costs. The agreement provided:
Title to the herein described property must be merchantable or must qualify for title insurance. Customary and useful restrictions, easements, and rights of way shall not be considered defects in title. Purchaser shall have ____ days from before closing[1] to examine title. If needed, Seller shall have thirty (30) days from date of written notification to perfect title and obligates himself to make reasonable efforts to do so at his own expense. If Seller is unable to perfect title within said time, the deposit shall be returned and all parties hereto shall be relieved of all obligations or liabilities under this contract.
The contract specified that the closing date of the sale shall be on or before June 20, 1996 or within seven days after objections to title have been cured, whichever date is later. The contract also specified that, in the event of nonperformance by either party, the other shall have the right to specific performance and/or damages and reasonable attorney fees.
After the execution of the contract to sell, Mr. Norsworthy engaged American Abstract and Title Company (American) to perform a title search. Mr. Norsworthy claimed at trial that he forwarded all necessary documents to American by April 1, 1996. However, Adrienne Remedies, an employee of American, testified that the documentation was not received until June 15, 1996, just a few days before the specified closing date. Ms. Remedies also testified that, when she originally received the file, she believed that Mr. Williams was the owner of the property, rather than WSIS, which is a Tennessee corporation.[2] After discovering that WSIS was the record owner of the property, it became necessary for American to secure a copy of the corporate charter from the State of Tennessee. The charter was not obtained by the June 20, 1996 closing date.
On June 17, 1996, Mr. Norsworthy informed Mr. Williams that there was a minor problem with the closing that should be cleared up by June 20, 1996. However, according to Mr. Williams, he was not told what the problem was. Mr. Williams testified that he called the title company and spoke with Ms. Remedies. She told him that there was a minor problem with completing the closing documents. On June 19, 1996, Mr. Williams faxed a list of provisions he wanted added to the deed. These provisions were that the mortgage given in favor of WSIS could not be assumed, that the property could not be subdivided during the mortgage, that WSIS was to retain one-half of all mineral rights, and that interest was to be calculated on the unpaid mortgage balance each month. These provisions had not been discussed with the plaintiffs and were not included in the contract to sell, which specified *1048 that the document constituted the entire agreement between the parties.
On June 20, 1996, the closing date specified in the contract to sell, the plaintiffs went to American's office, prepared to close the sale. The plaintiffs brought a certified check for $6,300.00, as provided in their contract with WSIS. However, the closing documents were not completed at that time and none of the parties realistically expected that the closing would take place on June 20. Therefore, neither Mr. Williams nor Mr. Norsworthy appeared at the closing.
Mr. Williams testified that when he did not hear anything by June 20, 1996, he assumed that the sale was off and the contract to sell was no longer binding. After the closing failed to occur on June 20, Mr. Norsworthy sent a copy of the original contract to sell with July 12, 1996 filled in as a new closing date. Mr. Norsworthy testified that according to general practice, the buyer and seller would initial the change, thereby extending the closing date. Mr. Williams did not initial the change or return the contract to Mr. Norsworthy.
On July 9, 1996, WSIS sold the timber on the property for $5,000.00. On July 12, 1996, American sent a letter informing Mr. Williams that the copy of the corporate charter had been ordered and the sale to the plaintiffs could be finalized as soon as the copy of the charter arrived. On July 17, 1996, American sent Mr. Williams a copy of the credit sale deed. Mr. Williams failed to respond.
In the interim, the plaintiffs became aware that WSIS had sold the timber on the property. According to Mr. Williams, the plaintiffs conveyed to him suggestions regarding how to deal with the diminution in the value of the property, caused by the cutting of the timber. Mr. Williams rejected those suggestions and relayed to the plaintiffs an offer that the property could be purchased for $42,000.00, to be paid over a two-year period. Obviously, the terms of this offer were more onerous to the plaintiffs than those in the original agreement to sell.
On January 7, 1997, WSIS entered into a lease purchase agreement concerning the property with third parties, Thomas and Becky McMillan. The contract with the McMillans was more favorable to WSIS than those of the contract to sell made with the plaintiffs. However, according to Mr. Williams, the contract with the McMillans was later nullified and WSIS still owned the property at the time of the trial.
In February 1997, the plaintiffs sent a demand letter to the defendants, requesting specific performance of the contract to sell. When WSIS and Mr. Williams refused to comply, on June 16, 1997, the plaintiffs filed suit requesting specific performance of the contract to sell, damages and attorney fees. Both WSIS and Mr. Williams were named as defendants. Mr. Williams was sued in his individual capacity and the plaintiffs claimed that the corporate veil of WSIS should be pierced. However, at trial, the parties stipulated to the dismissal of Mr. Williams as a defendant in his personal capacity.
Trial on the matter was held on December 15, 1997. On February 9, 1998, the trial court filed a judgment in favor of the defendants, dismissing the plaintiffs' demand for specific performance. The court noted that the contract to sell provided that title to the property must be merchantable and that the seller had thirty days from written notification to perfect title, if title was merchantable. The court found that prior to the June 20, 1996, the defendant was orally notified there was a problem with the title, but was never given written notification. The court stated, "Hence, this Court finds that the Seller was under no obligation to perfect title and that the `Sales Agreement' expired on June 20, 1996." The plaintiffs filed a motion for new trial, objecting to the trial court's ruling. The motion was denied and the plaintiffs appealed.

CONTRACT TO SELL
On appeal, the plaintiffs argue that the trial court erred in finding that WSIS did not breach the buy/sell agreement, thereby rejecting the plaintiffs' claim for specific performance and/or damages. The plaintiffs acknowledge that the contract to sell provides that the seller shall have thirty days from written notification to perfect title if it is not *1049 merchantable. The plaintiffs assert there is no dispute that WSIS did not get written notification of a problem with the title. However, the plaintiffs contend there was never a defect in the title which would have relieved WSIS of its obligation to sell, and, since WSIS was not given written notification of a defect in title prior to the established closing date, WSIS was obligated to appear and close the sale on June 20, 1996. The failure of the corporation to comply with this provision constituted a breach of the contract to sell, entitling the plaintiffs to specific performance of the contract.
La. C.C. art. 2623 provides:
An agreement whereby one party promises to sell and the other promises to buy a thing at a later time, or upon the happening of a condition, or upon performance of some obligation by either party, is a bilateral promise of sale or contract to sell. Such an agreement gives either party the right to demand specific performance. A contract to sell must set forth the thing and the price, and meet the formal requirements of the sale it contemplates.
In order to obtain the right of specific performance, the reciprocal consent of both parties as to the thing, the terms and the price must be shown. Dunaway v. Woods, 470 So.2d 574 (La.App. 1st Cir.1985). In the present case, there is no dispute that, in the contract to sell, the parties agreed as to the thing, the terms and the price. Also the parties clearly agreed that specific performance could be demanded for a breach of the contract. The plaintiffs contend that there was no need to notify the defendant of a defect in the title, because, in fact, there was no defect.
A merchantable title is one which can be readily sold or mortgaged in the ordinary course of business by reasonable persons familiar with the facts and apprised of the questions involved. Parker v. Machen, 567 So.2d 739 (La.App. 2d Cir.1990). It need not be free from every technical defect, of all suspicion, or the possibility of litigation. Roberts v. Medlock, 148 So. 474 (La.App. 2d Cir.1933); Toler v. Pacific International Petroleum, Inc., 465 So.2d 925 (La. App. 2d Cir.1985), writ denied 468 So.2d 1210 (La.1985). It must be a record title free of rational substantial doubt to the extent that a purchaser should feel that he can hold his purchase in peace without the probability of attack and with reasonable assurance that it will be readily salable on the open market. The word "merchantable" implies something less than a perfect title and permits of defects which are not reasonably liable to result in assault. Roberts v. Medlock, supra. A title is unmerchantable when it is suggestive of litigation. Parker v. Machen, supra.
In the present case, the problem arose because the title company needed to secure a copy of the corporate charter of WSIS in order to ensure that the company was, in fact, a corporate entity. This was a requirement by the title company and was not indicative of any problem with the title to the property. When the copy of the corporate charter was received, it was clear that WSIS was indeed a duly incorporated entity and the chain of title showed that WSIS was the owner of the property. Therefore, because there was no defect in the title, there was no necessity that the seller be notified in writing and called upon to cure a defect. Therefore, the fact that WSIS was not notified, through Mr. Williams, in writing, of a defect in the title, because none existed, is not dispositive of the issues presented here. In fact, it was the ambiguity created by Mr. Williams in the manner of signing the contract to sell which caused confusion as to the owner of the property and resulted in the delay in completing the closing.
However, as admitted at trial, the documents required for the closing were not ready for execution on June 20, 1996. WSIS argues that it was not notified to appear for the closing and never assented to an extension of the closing date. Because of these factors, WSIS argues that the contract to sell expired by its own terms on June 20, 1996. The argument that WSIS was not notified to appear for the closing is without merit. As stated earlier, WSIS agreed to pay the closing costs in this transaction. It was Mr. Norsworthy, the real estate agent hired by WSIS, who chose American to prepare the closing documents. Mr. Williams, on behalf *1050 of WSIS, contacted American, directing certain items he wished to be included in the deed. Therefore, it was the duty of WSIS to insure that the documents were timely prepared and the closing occurred timely. It was WSIS that had an obligation to communicate and cooperate with American to insure that this duty was fulfilled.
In the present case, the plaintiffs argue that they did nothing to impede the preparation of the documents necessary to complete the sale. Instead, they argue that the delay in the proceedings was caused by the real estate agent's failure to turn the matter over to American until approximately five days before the sale. The plaintiffs contend that Mr. Norsworthy was an agent acting on behalf of Mr. Williams and WSIS and therefore, the delay was entirely imputable to the defendant.
In most cases, it is the buyer or his mortgage company that requires a title opinion. Here, the property was to be financed by the seller, WSIS. The testimony shows that Mr. Norsworthy sent the documents to the title company, and that neither party had made a request for a title search. The cases indicate there can be confusion as to which party the real estate agent represents.[3] See Latter & Blum, Inc. v. Richmond, 388 So.2d 368 (La. 1980); Smith v. Remodeling Service, Inc., 94-589 (La.App. 5th Cir. 12/14/94), 648 So.2d 995; Reeves v. Weber, 509 So.2d 158 (La.App. 1st Cir.1987); Uhlich v. Medallion Realty, Inc., 334 So.2d 788 (La.App. 4th Cir.1976), writ denied 338 So.2d 701 (La.1976). But it is clear in this case that Mr. Norsworthy contacted American to act on the behalf of WSIS in preparing the deed.
The plaintiffs fulfilled all their obligations under the contract to sell and were ready, willing and able to close the sale. Further, the plaintiffs appeared on the closing date, to fulfill their obligation. The fact that the documents were not ready is not attributable to any fault of the plaintiffs. In agreeing to pay the costs of closing, WSIS assumed the responsibility of seeing that the closing documents were timely prepared. There is testimony in the record showing that Mr. Norsworthy did not transmit the necessary documents to American until a few days before the closing. The delay in meeting the closing deadline lies with Mr. Norsworthy and Mr. Williams, not with the plaintiffs. Therefore, the plaintiffs cannot be deprived of specific performance of the contract to sell because they were not responsible for the delay in closing the sale.
Further, the facts show that Mr. Williams, acting on behalf of WSIS, was told that a "problem" existed that would be cleared up by the closing date. However, Mr. Williams, who lives in Tennessee, did not make preparations to appear at the closing and, the day before the closing, faxed to American a request for several items to be added to the deed which were outside the agreement and which most likely would not be accepted by the plaintiffs. Without determining the status of the agreement with the plaintiffs, WSIS then quickly sold the timber on the property and sought another buyer for the land. This action evidenced dissatisfaction by WSIS with the terms of the agreement with the plaintiffs and the desire to make more lucrative contracts regarding this property with parties other than the plaintiffs.
In deciding whether to grant specific performance on contracts to sell, the courts have focused on which party was responsible for delays when the closing failed to occur on a specified date. The cases generally have held that a party who causes the delay may not demand specific performance.
In Lamar v. Young, 211 La. 837, 30 So.2d 853 (1947), an agreement to sell was not completed by the specified closing date because the buyer determined that a survey of the property was necessary. However, the buyer failed to complete the survey timely. After the passage of the time period for closing the sale, the seller informed the buyer *1051 that he would not pass the act of sale. The court found that the seller had not led the buyers to believe that the time limit in the agreement had been abrogated. Because the buyer was responsible for the delay and failed to get the seller's agreement to an extension, the buyer was not entitled to specific performance. Further, the seller had a valid reason to have the sale completed within the time period, and the seller had said or done nothing that indicated otherwise.
In Lejeune v. Redd, 478 So.2d 717 (La. App. 3d Cir.1985), writ not considered 480 So.2d 737 (La.1986), a buyer was denied specific performance where the buyer failed to inform the seller of a possible defect in the title. In Lejeune, the buyer, by his own tardiness, prevented the seller from delivering merchantable title and the buyer did not seek to obtain an extension.
In Hammond Asphalt Company, Inc. v. Ponder, 303 So.2d 851 (La.App. 1st Cir.1974), writ denied 307 So.2d 628 (La.1975), the buyers and sellers entered into a contract to sell a ten-acre tract of land and a two-acre tract. A defect in the title to the smaller tract was detected and the seller was notified. Because the defect could not be cleared by the closing date, the parties agreed to an extension of time for passing the sale. The seller failed to cure the title and then argued that the contract to sell was not enforceable because the time specified for passing the sale was not extended in writing before the original expiration date. The court found the seller was at fault in causing the delay in closing the sale. The buyer was found not to be in default because he stood ready, willing and able to accept title under the terms of the agreement.
In Fortenberry v. Decay, 279 So.2d 725 (La.App. 1st Cir.1973), writ denied 282 So.2d 140 (La.1973), the buyer and seller entered into a contract to sell. The seller then decided to mortgage another piece of property thereby clearing the encumbrance on the property to be sold. Due to delays in completing this process, the original closing date passed. The seller then determined that she no longer wished to sell the property and claimed that the contract to sell had expired because there was no written agreement to extend the contract. In that case, the delay was attributable to the seller and the court found that the buyer was not in default of the contract to sell despite his failure to obtain a written extension.
In Bonfield v. Tichenor, 189 So. 635 (La.App.Orleans 1939), the seller was informed of a problem with the title to property and the seller refused to provide the necessary information to clear the title within the term of the contract. The buyer was not responsible for the delay and was granted specific performance.
Because we find that the plaintiffs did not fail to fulfill any obligations under the contract to sell, did not cause the delay in closing the sale and were ready to perform on June 20, 1996, the specified closing date, we find no reason to deprive the plaintiffs of specific performance. We reverse the trial court judgment to the contrary.

DAMAGES
In addition to demanding specific performance of the contract to sell, the plaintiffs also request damages for the diminution in the value of the property caused by the sale of the timber, costs for restoring the property to its original appearance, restoration of loss of income caused by the defendant's occupancy of the property, emotional suffering for failure to perform the contract to sell and for destroying the appearance of the property, and costs and attorney fees.
The contract to sell in this case provides that, in the event of nonperformance by either party, the other shall have the right to specific performance and/or damages and reasonable attorney fees. It was established at trial that the plaintiffs were deprived of the timber on the property and therefore, are entitled to recover the $5,000.00 that the defendant received for its sale. Accordingly, we reduce the purchase price of the property, which was established at $39,000.00 in the contract to sell, by this amount and set the price at $34,000.00.
Regarding the plaintiffs' claim for damages for rent and for restoration, they have failed to adequately establish this element of damages. As to the claims for emotional damages *1052 for the change in appearance of the property and for failure to complete the sale as scheduled, the plaintiffs failed to offer sufficient proof as to their legal entitlement to these elements or to show the extent they were damaged. Therefore, we deny the plaintiffs' claims for these elements of damages.
The plaintiffs also seek to recover costs and attorney fees. Attorney fees may be awarded only if provided by statute or in the contract between the parties. The contract to sell in this case included the right to demand reasonable attorney fees in the event of breach of the agreement. The plaintiffs provided affidavits to the court establishing their legal expenses as $6,500.00. The defendant made no showing that this amount was unreasonable. Therefore, the plaintiffs are granted attorney fees in this amount and all costs in this court and in the court below are assessed to the defendant, WSIS, Inc.

CONCLUSION
For the reasons stated above, the lower court judgment is reversed and judgment is now rendered in favor of the plaintiffs, Tomas and Linda Coronado Deleon, and against the defendant, WSIS, Inc. The defendant is ordered, within ten days of the date this judgment becomes final, to transfer title of the disputed property to the plaintiffs upon payment by the plaintiffs of a total purchase price of $34,000.00. The original price in the contract to sell, $39,000.00, is reduced by $5,000.00 in damages for the sale of the timber. Terms of payment are to be in accordance with the contract to sell. In addition, the defendant is to pay the plaintiffs $6,500.00 in reasonable attorney fees. All costs in this court and in the court below are assessed to the defendant.
REVERSED AND RENDERED.
NOTES
[1] The phrase "before closing" was filled in by hand on a blank line on the contract form.
[2] The contract to sell reflects that Mr. Williams signed the contract in the blank specified for the seller as "George W. Williams" and, in smaller letters, "Pres. WSIS, Inc," rather than signing WSIS, Inc., by George W. Williams, President.
[3] The amendments to the provisions on mandate, La. C.C. arts. 2989 et seq., enacted by Acts 1997, No. 261, effective January 1, 1998, were not in effect at the time this case arose. However, we note with interest that La. C.C. art. 3000 provides that a person may be the mandatary of two or more parties such as a buyer and a seller, for the purpose of transacting one or more affairs involving all of them. In such a case, the mandatary must disclose to each party that he also represents the other.