# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 5, 2013

No. 13-30013
Summary Calendar

Lyle W. Cayce
Clerk

LLOYD RAYMOND MARTIN, III; NICOLE EASTERWOOD MARTIN,

Plaintiffs-Appellants

v.

FIDELITY NATIONAL TITLE INSURANCE COMPANY,

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CV-4195

Before KING, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants Lloyd and Nicole Martin filed suit against Defendant-Appellant Fidelity National Title Insurance Co., asserting claims for breach of title insurance policy and bad faith. The district court granted Fidelity's motion for summary judgment on the Martins' claims, and the Martins appealed. For the following reasons, we AFFIRM the district court's judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30013

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Central to this case is the chain of title to property owned by Lloyd and Nicole Martin (the "Martins") in St. Tammany Parish, Louisiana.  The property originally appears to have been owned by Herbert Nill.  It then was acquired by Herbert Nill's son, William C. Nill, in 1959, and redeemed by him from a tax sale in 1988.  On February 14, 2001, Hickory Glade, Inc. ("Hickory Glade"), despite holding no recorded interest, conveyed its interest in the property by quitclaim deed to William Magee, one of Hickory Glade's directors and officers.  Magee proceeded to file a petition for declaratory judgment in Louisiana state court against Herbert and William C. Nill, their spouses, heirs, and assigns (the "Nills") on April 9, 2002, seeking recognition of ownership of the property. Because the attorney appointed by the state court to represent the Nills appears never to have contacted them, the Nills did not respond to Magee's suit.  As a result, the state court entered a default judgment declaring Magee the owner of the property.

Magee then donated part of the property to the Great Commission Foundation of Campus Crusade for Christ, Inc. ("Great Commission Foundation").  Shortly thereafter, Magee and the Great Commission Foundation sold the property to Buddy Coate Homes, LLC ("Buddy Coate").  On August 16, 2005, Buddy Coate filed a petition for declaratory judgment in state court to quiet title against the Nills.  Perhaps not coincidentally, Magee represented Buddy Coate in this action.  As before, a default judgment was entered against the Nills.

Buddy Coate then sold the property to Mark and Kristen Graziani.  The Grazianis, in turn, sold the property to the Martins.  However, when the Martins tried to sell the property to Adam and India Sachitano, the Sachitanos' closing agent identified a problem with the Martins' title.  After the attempted sale to the Sachitanos failed, the Martins filed a claim with their title insurance

provider, Fidelity National Title Insurance Co. ("Fidelity"). The claim alleged a defect in title created by Magee's acquisition of the property from Hickory Glade. Fidelity proceeded to conduct an investigation and identified two surviving descendants of William C. Nill—Pamela Cummings and Paula Windham. A third descendant, William P. Nill, previously had died intestate without a spouse or dependants. Cummings and Windham executed quitclaim deeds in the Martins' favor for the sum of $16,000. They also executed Affidavits of Death, Domicile and Heirship as to their father, William C. Nill, and their brother, William P. Nill.

Fidelity presented the quitclaim deeds to the Martins, who refused to accept them in satisfaction of Fidelity's obligation under the title insurance policy. Fidelity nevertheless recorded the deeds in St. Tammany Parish's conveyance records. Later, Fidelity also obtained quitclaim deeds and affidavits from other heirs of Herbert Nill for $16,500.

On June 29, 2009, the Martins filed suit against Fidelity in district court for alleged breach of the title insurance policy and bad faith. Fidelity filed a third-party complaint in subrogration against the Martins' predecessors-in-title, including, *inter alia*, Magee, Buddy Coate, and the Grazianis. Magee and Buddy Coate moved for summary judgment on Fidelity's claims, which the district court denied on September 26, 2011. Then, on May 8, 2012, Fidelity filed motions for summary judgment against the Martins, Magee, and Buddy Coate. The district court granted Fidelity's motions on September 11. The court found that Fidelity had the right under the title insurance policy to attempt to cure the defect in the Martins' title, and did so by procuring quitclaim deeds from William C. Nill's only heirs. Accordingly, the court concluded that the Martins now held merchantable title. Finally, the district court rejected the Martins' argument that they were entitled to statutory penalties resulting from damages they

suffered as a result of being unable to sell their home, refinance it, or use it as collateral.

The Martins, Magee, and Buddy Coate filed motions to alter or amend the district court's order. The district court denied the Martins' motion. It granted Magee and Buddy Coate's motion to reduce the damages award against them to $16,000—the amount Fidelity paid to William C. Nill's daughters for the quitclaim deeds. The Martins then timely appealed the district court's dismissal of their claims.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. *Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 232 (5th Cir. 2012). The district court's judgment should be affirmed "if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute [as] to any material fact and the movant is entitled to judgment as a matter of law." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011); *see* Fed. R. Civ. P. 56(a).

## III. DISCUSSION

At the outset we note that the majority of the Martins' arguments are raised for the first time on appeal. Although the Martins present several reasons why these arguments were not raised below, none of them constitutes the kind of "extraordinary circumstances" we have required to deviate from our "general rule [that] arguments not raised before the district court are waived and will not be considered on appeal." *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) (citation omitted); *see also N. Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 916 (5th Cir. 1996) ("Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it."). Thus, the Martins argue that their "trial counsel did a poor job of exposing the deficiencies

of Fidelity's arguments," effectively leaving the Martins as *pro se* litigants. But mere dissatisfaction with counsel's representation does not entitle the Martins to raise what they perceive as better arguments on appeal. *See Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 288–89 (5th Cir. 1985) (remedy for counsel's mistakes or omissions resulting in dismissal of suit is to seek malpractice damages); *cf. Price v. Hous. Auth. of New Orleans*, 453 F. App'x 446, 448–49 (5th Cir. 2011) (per curiam) (unpublished) (finding claims of error waived even where waiver was the result of poor briefing by newly-obtained counsel). Similarly, the fact that the case was transferred three times within the district court and that Fidelity purportedly misdirected the district judge's attention does not excuse the Martins' failure to challenge Fidelity's arguments below. *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011) (per curiam) ("Failure to raise an argument before the district court waives that argument . . . .").

Limited to those arguments that were raised in the district court and are renewed on appeal, the Martins essentially present two questions for consideration: first, did Fidelity cure the title defect such that the Martins were left with merchantable title; and second, did Fidelity breach its obligation of dealing in good faith.[1] We consider each question below.

## I.     Merchantability of Title

Under Louisiana law, a title to property is merchantable when the title "can be readily sold or mortgaged in the ordinary course of business by reasonable persons familiar with the facts and apprised of the questions involved." *Deleon v. WSIS, Inc.*, 728 So. 2d 1046, 1049 (La. Ct. App. 1999). Although the title need not be free from every technical defect, suspicion, or possibility of litigation, it must be "free of rational substantial doubt to the

---

[1] The Martins' third issue on appeal—that Fidelity did not have the right to cure the title defect because of the terms of the title insurance policy and because the Sachitanos decided not to purchase the property—was not argued in the district court.

extent that a purchaser should feel that he can hold his purchase in peace without the probability of attack and with reasonable assurance that it will be readily salable on the open market." *Id.* "Title does not become unmerchantable merely because litigation is possible, but only when the title is reasonably suggestive of future litigation." *Bart v. Wysocki*, 558 So. 2d 1326, 1328–29 (La. Ct. App. 1990).

The district court concluded that the Martins' title was merchantable after considering the two chains through which title to the property may have passed. The first chain traced the title from William C. Nill to his daughters, Cummings and Windham, and his son, William P. Nill. The second chain originated with Hickory Glade, which manufactured an interest in the property that it then conveyed to Magee. Magee in turn conveyed part of the property to the Great Commission Foundation. Magee and the Great Commission Foundation then sold their interests in the property to Buddy Coate, which sold the property to the Grazianis. According to the district court, Fidelity successfully cured the defect because the Martins ended up in possession of the property regardless of which chain of title prevailed. If title flowed through Magee, then the Martins' purchase of the property from the Grazianis was valid. Alternatively, if title remained with the Nills, Fidelity's recording of William C. Nill's daughters' quitclaim deeds again left the Martins in sole possession of the property.

The Martins resist this conclusion on the ground that it is in conflict with the district court's earlier finding that a genuine issue of material fact existed as to the merchantability of title based on the two state court judgments that declared first Magee and then Buddy Coate the owners of the property, as well as Hickory Glade's quitclaim deed.[2] They argue that "[n]o responsible title

---

[2] The Martins also argue that the district court failed to look to the title insurance policy's definition of merchantability in determining whether title was merchantable. Aside from not having been raised in district court, the Martins' argument also misses the mark.

examiner could be expected to pass over the conflicting claims of record between the declaratory judgments on which Fidelity's title examiner erroneously relied clearing the title, and the quitclaim deeds by which Fidelity has established two other competing and broken lines of title."

The Martins ignore the circumstances under which the district court's prior opinion was rendered. In September 2011, the district court, denying Magee and Buddy Coate's motion for summary judgment, reasoned that "the [Hickory Glade] quitclaim deed and two state court declaratory judgments are clouds on the title to the Martin Property." *Martin v. Fid. Nat'l Title Ins. Co.*, No. 09-4195, 2011 WL 4478431, at *3 (E.D. La. Sept. 26, 2011). The district court rejected Magee and Buddy Coate's argument that they had conveyed merchantable title because Hickory Glade "was not the record owner of the property and had no interest in the property to quitclaim, [and thus] the quitclaim did not transfer anything to Magee." *Id.* Additionally,

> [A]t the time of the [Martins'] purchase, the Nills could arguably still attack the default judgments as null on the grounds of fraud or ill practices. . . . The Nills were not notified of the quitclaim or the subsequent declaratory judgments, and there is nothing in the record to suggest they were aware of these events. Thus, there is no basis for the Court to conclude that the prescriptive period ran on the Nills' ability to attack these transactions. The judgments remained clouds on the title when the Martins purchased the property.

*Id.* at *5 (citations omitted). A title examiner also agreed that the default judgment declaring Magee the owner of the property constituted a cloud on the title. *Id.*

But while the district court's September 2011 decision addressed Magee and Buddy Coate's motion for summary judgment, nothing prevented Fidelity

---

It is undisputed that there was a defect in the title. The salient question is whether Fidelity cured that defect.

from later presenting, and the district court from considering, evidence in support of Fidelity's motion for summary judgment that Fidelity had acquired quitclaim deeds from Michael C. Nill's heirs on the Martins' behalf. Indeed, the district court's earlier opinion expressly relied on the fact that the Nills could still challenge the state court default judgments. As the district court later correctly determined, following the Nills' quitclaim deeds, the Martins were the "sole persons remaining with any viable claim to the property." The "previous clouds [were] no longer of concern" because "[a]ny risk of substantial litigation over title to the property would have been from the heirs of Nill who have quitclaimed their interest in the property to [the Martins]."

The Martins also argue that the Nills' quitclaim deeds were ineffective under Louisiana's "public records doctrine" because of gaps in the title chains. "The public records doctrine provides that an instrument involving immovable property shall be effective against third persons only from the time it is filed for registry in the parish where the property is located." *Longleaf Invs., L.L.C. v. Tolintino*, 108 So. 3d 157, 160 (La. Ct. App. 2012). "The primary purpose of the public records doctrine is the protection of third persons from unrecorded interests." *Carr v. Oaktree Apartments*, 46 So. 3d 793, 797 (La. Ct. App. 2010). The Louisiana Supreme Court has described the public records doctrine as a negative doctrine "because it does not create rights, but, rather, denies the effect of certain rights unless they are recorded." *Cimarex Energy Co. v. Mauboules*, 40 So. 3d 931, 944 (La. 2010).

According to the Martins, under the public records doctrine, the Nills' quitclaim deeds could not cure the title defect because William C. Nill's daughters' affidavits do not describe whether he left any interest in the property to Dixie Nill, his second wife, or her heirs. Moreover, the affidavits fail to state whether the property was in William C. Nill's estate at the time of his death. Finally, the affidavits do not speak to Herbert Nill's descendants and

transferees, including how Verna Nill—Herbert Nill's widow—acquired her interest in the property, which she apparently then conveyed to William C. Nill.

As with many of the Martins' arguments, their assertion that potential heirs exist other than those Fidelity discovered was not raised below and is thus not properly before us. In opposition to Fidelity's motion for summary judgment, the Martins only argued that "[t]he succession of all the Nill heirs would have to be opened and each heir worked through probate and properly put into possession." *See Batiste v. Theriot*, 458 F. App'x 351, 359 (5th Cir. 2012) (per curiam) (unpublished) ("[Plaintiffs] present no evidence or even more than a passing reference to these arguments in their briefs and, as such, those arguments are waived . . . ."). The Martins appear not to have presented evidence in opposition to summary judgment demonstrating that any of the potential claims they now discuss are anything more than speculative. *See RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("[C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment."). We again note that merchantability of title only requires that title be "free of rational substantial doubt." *Deleon*, 728 So. 2d at 1049. Aside from having failed to identify to the district court any of the individual relatives they now rely on, the Martins also have not presented evidence that any of these relatives have a claim to the property.[3] *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005) ("It is well settled in this Circuit that the scope of appellate review on a summary judgment order is limited to matters presented to the district court.").

---

[3] While asserting that they seek a mere legal determination, the Martins' description of the universe of possible Nill heirs highlights the factual nature of the inquiry the Martins ask us to undertake. *See N. Alamo Water Supply Corp.*, 90 F.3d at 916 (court will not consider newly raised arguments if issue does not involve pure question of law).

The Martins' reliance on *Kinler v. Griffen*, 251 F.2d 655 (5th Cir. 1958), is misplaced. In that case, a title examination revealed that there were heirs of a former owner of a one-half interest in the property who had been placed in possession by a state court judgment and had never been divested of their apparent interest. *Id.* at 657–58. Nothing here, however, indicates that any Nill heirs the Martins identify were placed in possession of the property.

We therefore conclude that under the facts of this case the district court did not err in finding that Fidelity cured the title defect created by Hickory Glade's conveyance.

## II.     Good Faith Dealing

The district court rejected the Martins' request for statutory penalties because they failed to provide any evidence of these damages or that Fidelity acted in bad faith. The Martins contend that this finding was in error because Fidelity delayed paying the Martins' claim or curing the defect, resulting in their losing the opportunity to sell the property to the Sachitanos.

The Martins' bad faith arguments largely consist of arguments that were not raised below and that are derivative of their other contentions, including that Fidelity did not cure the title defect. For example, they argue that Fidelity did not act in a timely manner in attempting to cure the defect. Similarly, they assert that the district court could not determine as a matter of undisputed fact that Fidelity's decision to cure by acquiring quitclaim deeds from William C. Nill's daughters was reasonable. These arguments were not raised below. *See AG Acceptance Corp.*, 564 F.3d at 700.

As to the Martins' contention that they suffered damages from the lost sale to the Sachitanos, the district court found that the Martins had not submitted any evidence in support of this finding. In their reply brief, the Martins concede that they failed "to introduce any probative evidence in response to Fidelity's summary judgment motion." They further admit that their alleged losses were

10

No. 13-30013

not established in the record.  Given these admissions and our determination that the Martins have not met their burden of showing extraordinary circumstances for us to consider arguments or evidence not presented in district court, we reject the Martins' contention that Fidelity acted in bad faith.

## IV.  CONCLUSION

For the aforementioned reasons, the district court's judgment is AFFIRMED.